Taylor, Chief-Justice.
My enquiries, m wuc ca._ , have led me to the belief, that the Plaintiff is entitled by law, to the money in the hands of the Sheriff, by virtue of the prior teste of his execution. I do not mean to give an opinion on any other facts than those stated on the record; nor, particularly, on the supposition that the money had been raised by a sale under the second execution»
The writ offufa, in this State, binds the Defendant’s goods from the teste of the writ, after which time, any sale of them is void ; because, from thence the goods are attendant to answer the execution. This is an old rMo of the Common Law, founded on the reason, that as &v cutions could issue only against goods which miglt,;r not so bound, be sold by the party, he would thus be í hh to evade what is,termed the life of the law, its effect and fruit. The Common Law, also, presumed that the SI <■ riff would execute such writs immediately, and thereby give such publicity to the transaction as ivould prevent imposition upon purchasers. The judgment did not bind, because that being in force for a year, it would have been vexatious to restrain the debtor from his ordinary private dealings for so long a period.
When the term lien is applied to other subjects in the law, its import is familiarly understood to be a binding, or attachment of the thing spoken of, for the benefit of him who is entitled thereto. The lien of a vendor on goods not yet delivered, of a carrier, a factor, or pawnbroker, entitles them, respectively, to a priority over others, whose claims are posterior, upon the simple rule of justice, that the first lien gives a right to the first satisfaction.
*311 So far from there being any reason wherefore this rule should not be applied, and enforced to a certain extent between the conflicting claims of creditors under different executions, it seems to me demonstrable, from a slight view of the alteration of the law by the statute of frauds, that it is so applied, and always has been.
When that statute was passed, the priority arising from the teste was understood to subsist in theory in full vigour: every book that treated on executions, laid it down as settled law : and the statute itself had no further view, than to restore its practical utility by the substitution of a lien better fitted, by its notoriety, to prevent fraud and injustice to third persons.
It was not that the rule of the Common Law was defective, in fixing on the teste of an execution to bind the Defendant's goods ; because, in reality, the law supposed the execution to be delivered to the Sheriff immediately from the teste ; and if, in point of fact, that had been done, the purposes of the statute would have been accomplished, and its enactment rendered useless. Thus the award of an execution, and the teste of an execution, are convertible terms ; but the former is chiefly used in cases before the statute. A Jmiafide, sale of chattels is good after judgment, but not after execution awarded — (8th Co. 170.) “ By the award of execution the goods arc bound, so that they may be taken in execution, into whose hands soever they come” — (Cro. Eliz. 174.)
But the real mischief intended to bo remedied was, that creditors took out executions, one under the other, without delivering them to the Sheriff, whence the retrospect of the teste made sales uncertain, each Plaintiff" being entitled, according to his relative priority ,• and it was utterly impossible for purchasers and strangers to tell, without an inspection of the record, a process neither cheap nor easy, to what extent- the goods were hound.
*312 s0 far as other persons were concerned, who might have a title to the goods between the teste and delivery, the statute designed to restore the old law; but as to the party himself, his executors and administrators, the goods, since the statute, as before, are bound from the teste — (2 Show. 485.)
If this position be correct, I would infer from it this-corrollary, that the cases, since the statute of frauds, shewing the force and extent of the lien created by the delivery of the writ oifi.fa. will go very far towards explaining and proving the extent and operation of the lien arising from the teste before the statute. A more direct mode of shewing the question would be, to adduce cases which occurred before the statute ; but none such, directly in point, are to be found. There are, however, dicta and decisions of modern Judges, relative to the Common Law in this point, which, if correctly reported, are entitled to much consideration. Lord Mansfield decided, that though the Sheriff had seized under one writ first, he was bound to sell under another delivered after-wards, if it had a prior teste — cited in 4 East 534, in notis. To the same effect, is the opinion of the late Chief Baron MacDonald, who having presided many years in the Court of Exchequer, may be supposed, was well instructed on the subject. His words are, ie I take it, before the statute of frauds, a writ of execution of a prior teste, would have been preferred to a writ of execution of a subsequent teste, although the latter was first delivered to the Sheriff, and was begun to be executed, provided that the writ of prior teste came to the Sheriff’s hands before sale” — cited in 16 East 279, in notis. If these opinions of these eminent men are to be relied on as authentic, they go the whole length of the present controversy. They will be found too, in accordance with the decisions since the statute.
The case of Hutchinson v. Johnson, (1 Term Rep. 729) shews, that where two writs of fi. fa. against the same *313 Defendant are delivered to the Sheriff on different days, and no sale is actually made of the Defendant’s goods, the first execution shall have the priority, even though the seisure was first made under the subsequent exeuaition. I would remark on this case, that the statute priority by delivery, is preserved, notwithstanding a seizure under a second delivery. Can any reason be assigned, wiiy the Common Law priority shall not be • maintained, notwithstanding a seizure under a subsequent teste, provided the first execution reaches the Sheriff before the last is actually executed? If there cannot, then the case before us is decided by this authority. The case of Smallcombe v. Buckingham was that of a sale by the Sheriff, under a second writ of fi.fa. the for-mu-JL fa. though first delivered to the Sheriff, not having been then executed. According to the report of it by Coimj7i§, the amount of the judvsnent was, that at Common Law, if there were two writs aijl. fa. the one bearing teste on sue?? a, day, and the other on the next day, and the last writ was first executed, sadh execution should not be avoided, and the Plaintiff in the first execution, must seek his remedy against the Sheriff | for the Sheriff ought to make execution at his peril: and if there was no default in him, he shall be excused ; as if be, who took the first writ out, conceals it in his pocket, the Sheriff may rightly make execution on another writ which hears the last teste, but comes first to his hands.' The lawf laid down in the case, affirms every principio on which the Plaintiff relies in the case before us, though it goes further, and validates a sale made under the second execution, a question with which we have now no concern. Rybot v. Peckham, cited in Term Rep. 729, is decided on the same principle $ and while it admits the validity of a sale under the second execution, it shews at the same time, that the Sheriff makes himself fiable, to the Plaintiff' in the first, which could not be, but for the priority of the latter. The Courts have evidently gone *314 far to support sales actually made under execution$ and ^ *s Pr°bably right, and according to the general policy of the laws, that innocent vendees should not be disturb-e(j ^ ¿¡orman£ lions, more especially as the Plaintiff. may obtain satisfaction from the Sheriff: but though a second execution executed may destroy the lien of the first; though it may be waived, or lost by laches or fraud, or overreached by relation of a bankruptcy or extent, yet nothing of that kind appears in this case, I am, therefore, of opinion that judgment shall be entered for the Plaintiff.
Hall, Judge.
It is submitted to this Court to direct to the discharge of which execution the money arising from the sale, and now in the hands of the coroner, shall be paid,
Executions at Common Law had relation to their teste, and from that time, so bound the property of goods and chattels as against the Defendants, and all claiming under them, though for a valuable consideration, that they were subject to be taken in execution — (8 Co. 171— Cro. Elizabeth 174, 440.) But it does not so vest the property in the goods as to defeat a sale made of the same goods under another execution — (1 Lord Raymond 252 — 1 Salk. 320 — 1 Coni. 35.) For otherwise, says Lord Holt, no one would purchase at an execution sale — (1 Ld. Raym. 252.) Whether such sales were held good at Common Law, for the reasons given by Ld. Holt, or whether by the statute of frauds, (as seems to be Jlshursl’s opinion in Hutchinson v. Johnson — 1 Term Rep. 731,) is not material in the consideration of the present question. It may be taken for granted that such is the law, and that the injured Plaintiff whose execution had a priority, and which was postponed by such sale, had a remedy against the Sheriff: see Rybot v. Peckham — (1 Term Rep. 731, Note.) It has been said, that because vendees under junior executions were pro *315 íce ted, that was proof that executions of the first leste did not completely bind the property in the hands of the Defendant. Tf there had been no other remedy for the Plaintiff, in the first execution, it is more titan likely that the lien created by his execution would have been held valid. But it was thought more just and equitable to throw the burthen on the Sheriff who had done the mischief, and make him liable to the creditor he had injured, rather than the innocent vendee under the younger execution, who was in no fault.
33 ut the reason why such sales are held good, does not apply to cases where goods have been levied upon, but not sold, and perhaps would not apply to cases where sales had taken place and the money was still in the hands of the Sheriff; because, although a sale had taken place, and the vendees were not to be disturbed, the money when not paid over might be applied to the discharge of the execution which had the prior right. But this question is not now to be decided, because in the case before us there liad been no sale, but only a levy under the execution, which issued from the County Court before the execution which issued from the Superior Court came into the hands of the Coroner.
in England, by the skit. 29, Car. 2, eft. 3, sec. 16, ex. ecutions bound the property of goods and chattels only from the time that such writs were delivered to the Sheriff to be executed, so that the lien which executions had at Common Law from their teste upon goods and chattels, commenced under that statute, from their delivery to the Sheriff. And it seems to me that the same law applied to executions delivered at different times to the Sheriff, as applied at Common Law to executions heal - ing different testes, and that before the statute, the delivery to the Sheriff did not alter the lieu created by the teste, more than since the statute the teste will affect the Men created by the delivery to the Sheriff,
*316 Supposing then the same rules applicable to executions bearing different testes in this State, that applies to dif-fcrent deliveries of executions under the statute in England, we have authority for saying, from Hutchinson v. Johnson — (1 Term Rep.) that the execution first delivered to the Sheriff shall be. first satisfied, although the property might he first levied upon by an execution subsequently delivered •, it follows, that as the statute is not in force in this State, that an execution hearing the first teste ought to he. satisfied before one of a younger teste-first delivered and levied upon property, but not sold, until the-one of the first, teste comes to the Sheriffs’ hands: for if the property is bound from the teste, it cannot bo the more bound from the delivery, and the delivery operates nothing. It is true, Lord Holt says, in the case of Smallcomb v. Buckingham — (1 Salk. 320) that at Common Law, if two executions bearing equal teste come to the hands of the Sheriff, he is bound to execute that one first that is first delivered. This was not the question before the Court. The question was, whether goods sold under an execution could be again sold under another execution, which had been first delivered to the Sheriff. That dictum of Lord Holt’s, is differently reported by different reporters. In 1 Ld. Raym. 252, lie is made to say, “ that if a f. fa. had been sued out the first day of the term, and another ft. fa. afterwards, and the last had been first executed, the other had no remedy but against the Sheriff.” Convyn, in Ms 1st vol. 35, reports the dictum thus, “ If at Common Law there were two writs of feri facias, the one bearing teste on suet a day, and the other on the next day, and the last writ was first executed, such execution should not be avoided, anil the party had no remedy but against the Sheriff.” In this report the preference is given on account of the first teste, and nothing is said about a delivery to the Sheriff.
But on the point of law involved in this dictum of Ld. Holt, so differently reported, we have, by way of expía- *317 nation, the dictum of another Judge, for I admit that it was not the question then pending for decision before the Court. In the case of The King v. Wells and Allnutt, decided in the Exchequer, (1C East 3,78, note,) Baron M’Donald says, “Before the statute of frauds, the subsequent writ of execution of a prior teste would have been preferred to another subject's writ of a subsequent teste, although the latter was first delivered to the Sheriff» and was begun to be executed, provided the writ of prior teste came to the hands of the Sheriff before a sale.” This position io laid down by MacDonald, in the decision of a case of comparatively recent date, with all the authorities oil the subject before him j his meaning on the point cannot be misconceived or mistaken, and it in in words decisive of the present question.
1 cannot see the effect that the case of bankruptcy in intended to produce. I ana not aware of any case where the assignees of a bankrupt have been adjudged to he eu titled to property taken under an execution before an act of bankruptcy committed. If an execution issues into the hands of a Sheriff, but is not levied upon property in the hands of the Defendant, and the Defendant, in the mean time, commits an act of bankruptcy, i admit that the lien created by the issuing of the execution is lost, and the assignees of the bankrupt are entitled, because the slat. 31st Jac. 1» ch. 19, sec. 9,11, expressly declares, “ that the property in the bankrupt’s possession, at the time of becoming a bankrupt, shall belong to the assignees of his commissioners, whereof there is no extent or execution served or executed before such time as he shall be - come bankrupt” — (1 Burr. 20.) So that the lien created by issuing the execution is expressly destroyed by that statute j but if the property had been seized before the commission of the act of bankruptcy, the creditor in the execution would have the preference.
But laying aside authorities on this subject, as contra - dictory and unsatisfactory, can there be any doubt as *318 the policy and justice of the case ? If an execution of prior teste is held up by the party, or not issued, which is the same thing, and one of posterior teste issues and is executed, there is no injustice in saying that the latter shall have the preference; vigilantibus et non dormienti-bus leges subveninnt. But when an execution of younger date happens, by mere accident, to reach the hands of the Sheriff before one of an older teste, and is not executed before the other is received by the Sheriff, I can see no injustice or inconvenience in giving a preference to the execution bearing the first or oldest teste, qui prior est tempore potior estjure. To adopt a contrary course, would be going further, as it seems to me, than protecting those who are laudably vigilant, and would open a door to fraud. The law had better designate the rule by which justice shall be administered, than leave it to the physical ability of creditors, or in other words, give a preference to that execution that the most despatch is used in first getting into the hands of the Sheriff.
For these reasons, I think the money in the hands of the coroner, arising from the sale of the land, should be paid to the Plaintiff in the execution which issued from the Superior Court bearing teste prior to the one under which the property was levied upon, that issued from the County Court.